IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONFERENCE AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | CASE NO: 2:08CV-110-SRW |
| ) | |
| DHL EXPRESS (USA), INC., ) | |
| ) | |
| Defendant. ) | |

### DHL'S OPPOSITION TO CONFERENCE AMERICA'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(F) AND MOTION FOR ADDITIONAL TIME TO CONDUCT DISCOVERY

COMES NOW the defendant/counter-plaintiff DHL Express ("DHL"), and in response to Conference America's Motion for Summary Judgment, files this, its Opposition to Conference America's Motion for Summary Judgment and Motion for Additional Time to Conduct Discovery pursuant to Rule 56(f), Fed. R. Civ. P. In support of its Motion and in opposition to Conference America's Motion for Summary Judgment, DHL shows as follows:

1.  Conference America's Motion for Summary Judgment is premature. As the Eleventh Circuit Court of Appeals has stated, "[t]he law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v.

City of Columbus, Georgia, 120 F.3d 248, 253 (11th Cir. 1997). It is clear that a court may grant summary judgment only "after adequate time for discovery." Celotex Corporation v. Catrett, 106 S.Ct. 2548, 2552-53 (1986); Snook v. Trust Co. of Georgia Bank of Savannah, 859 F.2d 865 (11th Cir. 1988) (reversing summary judgment for failure to allow adequate time for discovery); WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir. 1989) (same). "The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits." Snook, 859 F.2d at 870. In the present matter, DHL has not been given adequate time to conduct discovery. Indeed, the discovery process has only recently gotten underway, with the parties exchanging written discovery only last week.

2.      As fully set forth in the attached affidavit of John F. Whitaker, there is specific relevant information which will prove DHL's counterclaims and will show that there are genuine issues of material fact which will preclude Summary Judgment in this matter. (Affidavit of John F. Whitaker, attached as Exhibit "A"). DHL is entitled to discovery on these matters.

3.      Therefore, pursuant to Rule 56(f), DHL requests that this Court (1) deny Conference America's Motion for Summary Judgment; and (2) order a continuance

to enable affidavits to be obtained, depositions to be taken, and other discovery to be undertaken. DHL should have until at least December 2008 to complete discovery.

WHEREFORE PREMISES CONSIDERED, this Court should enter an order denying Conference America's Motion for Summary Judgment, and granting DHL until at least December 2008 to complete discovery relative to its claims for Fraud and Suppression.

                                           Respectfully Submitted,

                                           /s/ John F. Whitaker
                                           John F. Whitaker (WHI006)
                                           Douglas H. Bryant (BRY031)
                                           *Attorneys for Defendant*
                                           *DHL Express (USA), Inc.*

OF COUNSEL:

WHITAKER, MUDD, SIMMS, LUKE & WELLS, L.L.C.
400 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203-5203
Tel:   (205) 639-5300
Fax:   (205) 639-5350
jwhitaker@wmslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading on counsel as follows by electronic filing and placing the same in the United States mail, properly addressed and first-class postage prepaid on this the 27th day of May, 2008.

Robert Williams
Troutman Sanders LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000
(404) 962-6664 (fax)
*Attorney for Plaintiff*

/s/ John F. Whitaker
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CONFERENCE AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO: 2:08CV-110-SRW |
| ) | |
| DHL EXPRESS (USA), INC., ) | |
| ) | |
| Defendant. ) | |

RULE 56(F) AFFIDAVIT OF JOHN F. WHITAKER

STATE OF ALABAMA    )
                    )
COUNTY OF JEFFERSON )

1. My name is John F. Whitaker. I am over the age of 19 and have personal knowledge regarding the facts set forth herein. I am counsel of record for DHL Express in this matter. I am presenting this affidavit pursuant to Rule 56(f), Fed. R. Civ. P.

2. DHL filed its counterclaim on March 12, 2008. The parties' planning meeting was held on April 2, 2008. Initial disclosures were made on April 23, 2008. Responses to written interrogatories and request for production were exchanged by both parties only last week, and Conference America has failed to properly respond to all of DHL's discovery requests. The parties agreed at their planning meeting that the discovery deadline would continue until December 2008. No scheduling order has been entered by this Court, to date. DHL is only now sorting through the voluminous documents produced by Conference America, and no depositions have yet been scheduled.

3. Conference America has moved for Summary Judgment on DHL's Fraud and Suppression Counterclaim. DHL believes that it has been the victim of a scheme or artifice whereby Conference America fraudulently billed DHL for the "deactivation" of 1,981 user accounts. There are numerous issues of fact for which DHL will be seeking additional information, and DHL is entitled an opportunity to challenge the facts and affidavits submitted by Conference

America. Moreover, these issues of fact are relevant and, if proven, would preclude the entry of summary judgment.

4. I believe that the discovery process will show that around 2005 Conference America was having trouble competing in the marketplace, and was falling behind its competitors. Conference America realized that several of its larger accounts were about to discontinue their service with Conference America. Once this was realized, Conference America and its principal Robert Pirnie devised a scheme to defraud these customers. Along with their notice of termination of the service agreement, numerous Conference America customers, including DHL, specifically requested deactivation of all associated user accounts. Conference America was contractually required to terminate these accounts as requested. However, Conference America intentionally, without giving any indication, refused to honor these deactivation requests. At the time of these requests, the online terms and conditions did not contain a fee for deactivation. Instead, Conference America would, without authorization, contact individual company employees, and offer them $10 gift cards to come back as a customer. Once the corporate customer realized that they were still being billed for conferencing services and contacted Conference America for an explanation, Conference America, instead of informing the customer they had never intended to deactivate the accounts in the first instance, would represent that the initial failure to deactivate was only an oversight, and that all the customer need do was return a simple form. It is believed that Conference America would manipulate the terms and conditions on its webpage so that the fee would not appear at the time for which deactivation requests were made. Instead, a copy of the terms and conditions showing the fee would later be backdated by Conference America in order to make it appear as if the fees were in effect at the time the deactivation request was made.

Moreover, Conference America would bill the customers for the "deactivation" of inactive accounts that Conference America itself did not consider "active." For example, on several occasions, DHL would request Conference America provide lists of DHL users to assist in DHL's internal auditing process. Conference America knew that DHL relied on these representations. While DHL may have received the name of each individual account on an invoice sometime during the preceding years (a fact which DHL does not concede), it was not unreasonable for DHL to rely on Conference America's express representation of the number of active accounts. Both Conference America and DHL knew that Conference America was in the best position to know how many accounts were active – especially given the number of mergers between various DHL companies in the preceding years, and given the fact that there was never any understanding that old dormant accounts stayed active forever. Indeed, Conference America, maintained an internal coding system that coded inactive and unused accounts in different ways. Further evidence that Conference America did not actually consider DHL to have 1,981 active accounts, is the fact that it did not later solicit this number of accounts with free $10 gift certificates.

5. I believe that there is a basis for believing that the above information exists and is true. DHL has located a former employee of Conference America who will testify that he was asked to backdate the terms and conditions to show that the deactivation fee was included within

those terms prior to another customer's request to deactivate their accounts. He will also testify that the he overheard Conference America principals state that they were going to "get"a certain company with the deactivation fee scheme. This former employee will testify that he was so upset by the scheme that he decided to resign from Conference America.

DHL has discovered that numerous other companies have been ensnared by the same or similar scheme. DHL intends to send discovery requests to these other companies. Additionally, DHL believes that there may be other companies who have been defrauded by Conference America, and DHL needs to conduct additional discovery to determine the identity of these companies. Conference America has failed to identify these companies in its written discovery responses and has failed to produce the names of customers who may be subject to deactivation fees. DHL believes that it can prove a pattern and practice of fraudulent behavior by Conference America.

Further, DHL needs to depose Conference America employees to establish the above referenced facts and to challenge the facts presented by Conference America on summary judgment. Conference America has also failed to provide numerous documents and provide complete discovery responses regarding all communications it made with DHL employees.

6.  Discovery of the above referenced facts are essential to DHL's counterclaim and defense to Conference America's claims. Discovery of the above facts are also necessary to resist summary judgment.

7.  I believe that discovery of the above referenced facts will also create a genuine issue of material fact with regard to DHL's claims for fraud and suppression.

8.  Given the fact that the parties only exchanged written discovery last week, DHL has simply not had adequate time to conduct sufficient discovery.

John F. Whitaker

SWORN TO and SUBSCRIBED before me this the ___ day of May, 2008.

_____  9/17/2011
NOTARY PUBLIC        (Notarial Seal)

My Commission Expires: ___9/17/2011___